## COMMONWEALTH *VS.* CORIE STOKES.

Bristol. December 5, 2003. - January 22, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, & CORDY, JJ.

*Homicide. Joint Enterprise. Practice, Criminal,* Required finding, Instructions
to jury, Jury and jurors, Capital case. *Home Invasion. Burglary. Robbery.*
*Felony-Murder Rule. Evidence,* Consciousness of guilt. *Jury and Jurors.*

At the trial of an indictment for murder in the first degree, a Superior Court
judge correctly denied the defendant's generally phrased motion for a
required finding of not guilty at the close of the Commonwealth's case,
where there was sufficient evidence to support the defendant's liability as a
principal [744-745]; moreover, even if the defendant had specified that he
sought a required finding as to joint venture liability, there was no error,
because the evidence was sufficient to send the indictment to the jury on
that theory at the close of the Commonwealth's case [745-746], and at the
close of all the evidence, it remained proper to submit the defendant's
murder indictment to the jury on theories of both individual and joint
venture liability [746].

Evidence at the trial of an indictment charging home invasion was sufficient
for the jury to conclude that at least one, if not both, perpetrators had
broken the plane of the victim's door with his arm, thereby entering the
dwelling place of another. [746-749]

Following an instruction at a criminal trial that attempted armed robbery was
the predicate felony for a conviction of murder in the first degree, a
Superior Court judge's supplemental jury instruction on felony-murder was
not deficient, where the judge clarified the difference between murder in
the first degree and murder in the second degree and informed the jury that
he was only summarizing the elements of murder in the first and second
degrees and that all his instructions were to be taken as a whole. [749-750]

A judge's instruction to jurors to disregard certain evidence admitted as proba-
tive of consciousness of guilt at a criminal trial effectively eradicated the
evidence and rendered unnecessary any consideration of the propriety of
the admission of the evidence. [750-751]

A Superior Court judge did not abuse his discretion in dismissing, without
conducting a voir dire, a juror who appeared to be falling asleep during
various parts of the trial. [751]

INDICTMENTS found and returned in the Superior Court Depart-
ment on September 14, 1999.

The cases were tried before *Gary A. Nickerson,* J.

*Richard J. Shea* for the defendant.

*M. Catherine Huddleson*, Special Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant appeals from his convictions of murder in the first degree, home invasion, and unlawful possession of a firearm.[1] The murder conviction was based on the defendant's participation as a joint venturer in a felony-murder with attempted armed robbery as the predicate felony.[2] He was convicted as a principal on the home invasion and firearm indictments. The defendant claims that his motion for a required finding of not guilty should have been granted as to his liability as a joint venturer on the murder indictment; his motion for a required finding of not guilty on the home invasion indictment should have been granted because there was insufficient evidence that either defendant entered the home; and the judge's supplemental jury instruction defining felony-murder was insufficient as it permitted the jury to substitute home invasion (for which the defendant alleges the evidence was insufficient) for attempted armed robbery as the predicate felony. The defendant further claims that the judge abused his discretion by admitting evidence as probative of consciousness of guilt that the defendant had been located in Georgia two to three weeks after the shooting; and by dismissing a juror who appeared inattentive. Finally, the defendant requests that this court exercise its power under G. L. c. 278, § 33E, to order a new trial. We reject these arguments, conclude there is no basis to exercise our power pursuant to G. L. c. 278, § 33E, and affirm the defendant's convictions.

1. *Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with specific issues raised. On the evening of August 9, 1999, Cecil Smith, the victim, was visiting his girl friend, Crystal Rego, at her apartment in Fall River. Smith also supplied Rego with marijuana which she used herself and sold to others. At about 10 P.M., Rego opened the door in response to

---

[1]He was also convicted of conspiracy to commit armed robbery. This conviction was placed on file and is not before us on appeal.

[2]The codefendant, Michael Holloway, tried at the same time, was acquitted of all charges.

a knock and Smith, who was sitting on a sofa, was fatally shot. There were two men at the door when Rego opened it, and after viewing many photographs in the hours after the murder, Rego identified Stokes from a photographic array assembled by the police. She named him as the man closer to her at the apartment door. She was unable to identify or describe the second person to any meaningful degree.

Shortly after the murder, Dana Mazyck, who had obtained marijuana from Rego at her apartment earlier that evening, arrived at his girl friend's apartment and was smoking marijuana in the apartment's "smoking room." Ten to twenty minutes after Mazyck's arrival, the defendant; the codefendant, Michael Holloway; and a third man, Alberto "Tito" Diaz, entered the "smoking room." Interspersed with numerous failures of memory, Mazyck testified that the three men were "jumpy" and that Stokes said, "We just did some dirt." He heard the three discuss "a guy being shot, and [that] they didn't get anything." Stokes said, "I got him. I think I hit him." Mazyck also testified that all three of the men were discussing that they went to rob someone, thought the victim had a weapon, and so shot him.[3] According to Mazyck, Holloway said that "he was going to shoot the guy, but his gun jammed, and the gun was garbage." They were upset "because of the way it went down." The three did not have weapons with them at the time of the discussion, but mentioned a .45 caliber automatic handgun and a .22 caliber Ruger pistol. Mazyck testified that Stokes said "he wrapped his gun up in a T-shirt and hid it by the library." Mazyck also told the police that Stokes said he left a gun near a church. Mazyck admitted that he heard these statements while he was intoxicated from the marijuana he had been smoking and that, because of his friendship with Diaz, he initially withheld Diaz's name from the police.

The police located a .22 caliber discharged cartridge casing on the floor of the hall just outside the threshold of Rego's apartment. They also found a loaded .22 caliber Ruger semiautomatic pistol in the grass less than twenty-five feet from the entrance of Rego's apartment building. Ballistics testing

---

[3]As to this part of the conversation, Mazyck said that he "[couldn't] say who was doing the talking, or . . . the most talking."

indicated that the discharged cartridge casing found on the hall floor was fired from the .22 caliber Ruger pistol. Although the fatal bullet removed from the victim's body could not be positively identified as having been fired by that Ruger pistol, it was "Remington ammunition," and when the Ruger was found, it contained the same brand of ammunition. Further, the "land and groove" dimensions on the fatal bullet were "similar" to the Ruger's (although there was no expert testimony as to the meaning of this "similarity"). In addition, the discharged cartridge casing outside Rego's apartment door was of Remington manufacture. One day after the shooting, a jacket with a loaded .45 caliber handgun in one pocket was found by a passerby in a restaurant parking lot several blocks from the murder scene. A two-year old inhaler with the name of the codefendant Holloway also was found by the police in a pocket of the jacket. Rego testified that the gun held by the man closer to her (whom she had identified as Stokes) was "square looking" and she identified the .45 caliber handgun as "one of the guns from the incident." The jury were able to see both weapons.

2. *Required finding on theory of joint venture.* The jury were instructed that they could convict the defendant on a theory of either joint venture or principal liability, and the verdict slip reflected that instruction. The defendant maintains that there was insufficient evidence that anyone other than he shot the victim and, thus, his motion for a required finding of not guilty on the murder indictment should have been granted as to his liability as a joint venturer. The defendant's motion for a required finding did not alert the judge that he was seeking a required finding on a specific theory, i.e., joint venture liability. See *Commonwealth* v. *Berry*, 431 Mass. 326, 331 (2000). "[A] *generally phrased* motion for [a required finding] does not preserve for review the denial of the motion on a specific theory of liability when there was sufficient evidence to withstand the motion on an alternative theory . . . [W]hen the defendant submits a *generally expressed* motion for a required finding of not guilty in a murder case, the case may be submitted to the

jury as long as one theory is supported by the evidence." (Emphases in original.) *Id.* Here, there was sufficient evidence to support the defendant's liability as a principal (and the defendant does not contend otherwise). Thus, the judge correctly denied the motion.

Even had the defendant specified that he sought a required finding as to joint venture liability, there was no error. Liability as a joint venturer requires that the Commonwealth prove that the defendant was present at the scene of the crime, with knowledge that another intended to commit the crime or with intent to commit the crime, and by agreement was willing and available to help the other if necessary. *Commonwealth v. Berry, supra* at 330. Although the Commonwealth must present evidence that a principal other than the defendant committed the fatal act, the Commonwealth need not prove the identity of the actual perpetrator. *Id.* at 332. See *Commonwealth v. Netto,* 438 Mass. 686, 700-701 (2003), citing *Commonwealth v. Souza,* 428 Mass. 478, 488-489 (1998).

Here, the evidence of joint venture was sufficient to send the case to the jury on that theory. To support a joint venture conviction, "[t]he inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth v. Brooks,* 422 Mass. 574, 577 (1996). The evidence here meets the standard.

When the Commonwealth rested, Rego had identified the defendant as one of the two armed assailants at her door; the identity of the second man was unclear. There was evidence from which the jury could infer that the two men were acting together. The critical question was who fired the fatal shot. The forensic evidence together with Rego's testimony permitted the inference that it was not the defendant but the second (unknown) assailant who fired the bullet that killed the victim. The evidence permitted the inference that two handguns were involved in the incident, a .22 caliber and a .45 caliber, and the forensic testimony was substantial that the .22 caliber handgun was the weapon that discharged the fatal shot. Rego testified that the person closest to her, i.e., the defendant, had a "square-looking"

handgun.[4] Even the most cursory look reveals that the .45 caliber handgun is more "square" than the .22 handgun. The inference reasonably could be drawn, therefore, that Stokes was carrying the .45 caliber weapon and was a joint venturer with the shooter who was carrying the .22 caliber handgun. Thus, it would have been proper to deny a specific motion for a required finding as to the theory of joint venture liability at the close of the Commonwealth's case. Contrast *Commonwealth* v. *Berry, supra* at 332.

As the defendant renewed his motion for a required finding at the close of all the evidence, we must determine whether the Commonwealth's position deteriorated during the defendant's case. See *Commonwealth* v. *Johnson,* 435 Mass. 113, 118 n.6 (2001); *Commonwealth* v. *Basch,* 386 Mass. 620, 622 & n.2 (1982). The identity of the shooter became even less clear during the defendant's case. One witness testified that Tito Diaz had admitted to being the shooter, but Diaz's own statements to the police, while suggesting his involvement in the crime, were unclear as to his precise role. Nevertheless, this had no impact on the sufficiency of the evidence, as described above, that the defendant was present at the murder but did not fire the fatal shot. At the close of all the evidence, therefore, it was proper to submit Stokes's murder indictment to the jury on theories of both individual and joint venture liability. See *Commonwealth* v. *Leftwich,* 430 Mass. 865, 868-869 (2000) (with evidence that another had been present and involved in murder of victim, either as principal or joint venturer, proper to instruct on joint venture).[5,6]

3. *Evidence of home invasion.* To obtain a conviction of home

---

[4]However, Rego agreed that she knew little about guns; that the incident only took "a matter of seconds"; and that she was terrified and got only "a very brief look" at the weapons.

[5]The fact that Holloway was acquitted does not affect our decision. The jury's determination that Holloway was not the second assailant does not lessen the evidence against the defendant but simply reflects that the Commonwealth had not proved beyond a reasonable doubt that the second person involved was Holloway. There was still sufficient evidence that a second person fired the fatal shot and that that second person was someone other than the defendant. Contrast *Commonwealth* v. *Berry,* 431 Mass. 326, 332 (2000).

[6]*Commonwealth* v. *Green,* 420 Mass. 771, 779 (1995), cited by the defendant, does not support his argument. In that case, there was no evidence

invasion, the Commonwealth must show that the defendant "knowingly enter[ed] the dwelling place of another"; "knowing or having reason to know that one or more persons are present within"; "while armed with a dangerous weapon"; and "use[d] force or threaten[ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[red], or intentionally cause[d] any injury to any person within such dwelling place." G. L. c. 265, § 18C. The defendant moved for a required finding on this indictment at the close of the Commonwealth's case. We review the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). The defendant argues that the Commonwealth failed to prove the second element, entry of the dwelling place of another, because there was no evidence that the armed assailants or any parts of their bodies crossed the threshold of Rego's apartment.[7] The word "enter" is not defined in the statute. Where the Legislature does not define a term, we presume that its intent is to incorporate the common-law definition of that term, "unless the intent to alter it is clearly expressed." *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984), quoting *Commonwealth* v. *Knapp*, 9 Pick. 495, 514 (1830). No such intent is apparent in this case. *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 60 (1997). At common law, "[i]t [was] well settled that it is a sufficient entry 'when the thief breaketh the house, and his body, or any part thereof, as his foot or his arm, is within any part of the house.'" *Commonwealth* v. *Glover*, 111 Mass. 395, 402 (1873), quoting 3 Inst. 64; 1 Hale P.C. 551; 2 East P.C. 490. Accordingly, in *Commonwealth* v. *Burke, supra* at 690, we concluded that the entry element of a related statute, G. L. c. 266, § 16 (breaking and entering building in nighttime with intent to commit felony)

---

that anyone other than the defendant committed the shooting.

[7]There is no disagreement that the "dwelling place of another" is Rego's apartment and not the common hallway outside her apartment door. Although a secured common area of a multi-family residential structure may constitute a resident's "dwelling place" for purposes of G. L. c. 265, § 18C, see *Commonwealth* v. *Doucette*, 430 Mass. 461, 467 (1999), here the only evidence was that the outer entry door of Rego's apartment building was not locked and was open at the relevant time.

was satisfied by evidence of "any intrusion into a protected enclosure by any part of a defendant's body." "Terms appearing within the same or related statutes are to be given the same meaning unless the Legislature intends a different meaning." *Commonwealth* v. *Dunn, supra* at 60. General Laws c. 265, § 18C, and the burglary statutes, G. L. c. 266, §§ 14-19, are related statutes, see *Commonwealth* v. *Doucette,* 430 Mass. 461, 467 (1999); *Commonwealth* v. *Gruning,* 46 Mass. App. Ct. 842, 847 (1999), and there is no reason to assume that the Legislature intended different meanings for the term. The home invasion statute and the burglary statutes all seek to protect the home.[8] The unlawful entry in the one case is as destructive of that sanctity as in the other. Thus, the meaning of the word "entry" in the burglary statutes applies here as well and we conclude that an entry for purposes of the home invasion statute occurs when there is "any intrusion into a protected enclosure by any part of a defendant's body." *Commonwealth* v. *Burke, supra* at 690.

The defendant maintains that "no direct testimony or circumstantial evidence [permitted the jury to infer] entry of any body part." Our reading of the transcript finds otherwise. Rego testified that when she opened her apartment door, the assailants' feet were "[a]t the threshold of the door" and they were "waving guns . . . [b]ack and forth really fast" and pointing them at her. Without objection, the judge described Rego's demonstration of this arm-waving as "clearly indicat[ing] extended arms, moving left to right." From Rego's testimony and demonstration, a rational jury could infer that one with feet at the threshold of the apartment would cross that threshold with at least some part of his arm in order to wave the gun back and forth and point it at Rego. There was sufficient evidence for the jury to conclude that at least one, if not both, assailants had broken the plane of the door with his arm and thus that the

---

[8]Although we have commented that "we do not consider the term 'enters' as used in the burglary statutes entirely the same as the term 'enters' for purposes of the crime of armed home invasion," *Commonwealth* v. *Mahar,* 430 Mass. 643, 652 n.5 (2000), that comment was made in connection with the issue of permission to "enter" or a reasonable belief that one had a right to "enter." For our present purposes, concerning the physical nature of the entry, there is no distinction.

entry element of the home invasion statute was satisfied. See *Commonwealth* v. *Burke, supra* at 691 ("Evidence that the defendant placed his hand between the broken storm window and the inner window would be sufficient to warrant a finding of an entry"); *Commonwealth* v. *Lewis,* 346 Mass. 373, 377 (1963), cert. denied, 376 U.S. 933 (1964) ("jury could fairly have inferred that in the course of his opening the door some portion of the defendant's hand or arm came within the house" sufficient "to constitute an entry").[9]

4. *Supplemental instruction on felony-murder.* The judge instructed that the Commonwealth was proceeding against the defendant on the murder indictment on theories of deliberate premeditation[10] and felony-murder with attempted armed robbery as the underlying felony. The verdict slip, however, did not specify the underlying felony. After the jury had deliberated for two and one-half hours, they sent the judge a note seeking clarification of the difference between murder in the first degree and murder in the second degree. The judge told them that his instructions were to be taken as a whole and that no part of the instructions was any more or less important than the others. He said that he would review in "summary fashion the elements as to deliberate premeditated murder in the first degree [of which the defendant was not convicted], felony-murder in the first degree, and second degree murder." He did so, and there was no objection or request from counsel for further instruction. The defendant now maintains that these supplemental instructions on felony-murder provided only a general definition of that offense and did not repeat the original instruction that attempted armed robbery was the only predicate felony. Thus, he alleges that because there was insufficient evidence to support the indictment charging home invasion and the jury might have considered that offense as the underlying felony, he may have been convicted based on a crime for which evidence was lacking. There is an initial flaw in the defendant's contention,

[9]For purposes of this case, it is not necessary to decide whether an entry occurs when only an instrument used to commit the intended felony crosses the threshold. See *Commonwealth* v. *Cotto,* 52 Mass. App. Ct. 225, 229 (2001), for a helpful discussion of the issue.

[10]The jury did not find deliberate premeditation.

for as we have discussed, there was sufficient evidence for a conviction of home invasion. Regardless, the judge's supplemental instructions were not lacking in any fashion and did not invite the confusion the defendant suggests.

We judge the adequacy of a particular instruction not in isolation but in the context of the entire charge, as the adequacy of instructions is determined by their over-all impact on the jury. *Commonwealth* v. *Carrion*, 407 Mass. 263, 270 (1990), and cases cited. The scope of supplemental instructions is within the judge's discretion, *Commonwealth* v. *Johnson*, 429 Mass. 745, 753 (1999), and cases cited, and the judge need not repeat all or any part of the original instructions, *Commonwealth* v. *King*, 366 Mass. 6, 11 (1974), cert. denied sub nom. *McAllister* v. *Massachusetts*, 419 U.S. 1115 (1975). Issues not explicitly raised by the question may be omitted. *Commonwealth* v. *Sellon*, 380 Mass. 220, 233-234 & n.20 (1980). Here, the jury sought clarification only of the difference between murder in the first degree and murder in the second degree. Accordingly, the judge needed only to reinstruct on that which differentiated the two degrees of murder. He did so. Further, he informed the jury that he was only summarizing the elements of murder in the first degree and in the second degree and that all his instructions were to be taken as a whole. He had previously instructed that attempted armed robbery was the predicate felony for a conviction of murder in the first degree; repetition was unnecessary. See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 82 (1978) (unnecessary to repeat manslaughter instruction when jury inquired what constituted murder in first and second degrees). Finally, the fact that neither defense counsel objected to the supplemental instruction supports the conclusion that the instruction was not deficient.

5. *Evidence probative of consciousness of guilt.* The Commonwealth elicited evidence that the first time State Trooper Ronald Blais (who was involved in the investigation in this case) had ever seen the defendant was in Georgia two and one-half weeks after the murder. The defendant objected to the admission of this evidence. Later, in his final charge, the judge instructed the jurors to disregard it. The defendant argues that the judge abused his discretion by admitting this evidence as

probative of consciousness of guilt, and that the adverse impact from admission of the evidence was not cured by the later instruction to disregard it. It is unnecessary to consider the propriety of the admission of the evidence. The judge's later decision to strike the evidence and instruct the jurors to disregard it effectively eradicated the evidence. We presume the jury follow the judge's instructions. *Commonwealth* v. *Degro*, 432 Mass. 319, 328 (2000).

6. *Dismissal of juror.* The defendant posits that the judge abused his discretion by dismissing a juror who appeared to be falling asleep during various parts of the trial without conducting a voir dire to determine whether the juror in fact had been "dozing off." General Laws c. 234A, § 39, provides: "The Court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice." The judge observed the juror "dozing off" on three of the five trial days and brought this to the attention of counsel. Counsel for the codefendant Holloway also mentioned that the juror had "appeared [to her] to be sleeping at some point." After the judge noticed the same juror "dozing off at least three times during the charge as well," and that her body movements indicated she was falling asleep, he informed counsel that he would excuse her in the "interest of justice." Stokes objected (although counsel for Holloway and the prosecutor did not) but did not provide any reason for his objection and did not request a voir dire. There was no error. It is obviously not in the interest of justice to have a juror deliberate who has not heard the evidence or parts of the judge's charge.

7. *Relief pursuant to G. L. c. 278, § 33E.* Having reviewed the whole record, we conclude that there is no reason to exercise our power under G. L. c. 278, § 33E, to order a new trial or to direct entry of a lesser degree of guilt.

*Judgments affirmed.*