COMMONWEALTH vs. ANTWAN BURTON.

Plymouth. October 5, 2007. - November 9, 2007.

Present: MARSHALL, C.J., GREANEY, COWIN, CORDY, & BOTSFORD, JJ.

*Homicide. Armed Home Invasion. Joint Enterprise. Statute,* Construction.
*Practice, Criminal,* Voluntariness of statement, Motion to suppress, Required
finding, Capital case. *Constitutional Law,* Admissions and confessions,
Confrontation of witnesses. *Evidence,* Joint enterprise.

The criminal defendant's conviction of murder in the first degree on the
theory of felony-murder with armed home invasion as the predicate of-
fense was not legally permissible, where, at the time the offense occurred,
armed home invasion with a firearm was not punishable by life imprison-
ment; therefore, this court reduced the verdict to murder in the second
degree. [57-60]
The judge at a criminal trial properly denied the defendant's motion to sup-
press evidence of inculpatory statements he made to police officers, where
the judge's conclusions that the defendant's statements were voluntary and
that they were made after a knowing and intelligent waiver of his Miranda
rights were supported by the evidence and were warranted. [60-62]
This court declined to adopt a per se exclusionary rule making electronic rec-
ording of a criminal defendant's statement a prerequisite to its admissibility.
[62]
At a murder trial, statements made by the defendant's joint venturers im-
mediately after the murder, discussing what had happened, were properly
admitted in evidence, where the joint venture was continuing at the time of
the conversation and the statements were made in furtherance of the criminal
enterprise, and where the judge promptly and properly instructed the jury
regarding the statements [62-63]; moreover, the admission of the state-
ments did not violate the defendant's right to confront his accusers pursu-
ant to the Sixth Amendment to the United States Constitution, where the
joint venturers would not have reasonably foreseen their statements being
used in the investigation or prosecution of a crime [63-64].
The judge at a murder trial properly denied the defendant's motions for a
required finding of not guilty, in light of the defendant's incriminating
statements to police and other evidence. [64-65]

INDICTMENT found and returned in the Superior Court Depart-
ment on September 22, 2000.

A pretrial motion to suppress evidence was heard by *Charles
J. Hely,* J., and the case was tried before *Linda E. Giles,* J.

*Stephen Paul Maidman* for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, Antwan Burton, was convicted of murder in the first degree on the theory of felony-murder with armed home invasion as the predicate offense. He was also convicted of armed home invasion on a separate indictment charging that crime. The defendant appeals, claiming that he was improperly convicted of murder in the first degree because, at the time of the offense in this case the predicate offense, armed home invasion, was not a felony punishable by life imprisonment. The defendant also contends that certain evidence ,was improperly admitted at trial. Specifically, he asserts that statements he made to the police should have been excluded because they were involuntary and not electronically recorded, and that statements of other joint venturers were inadmissible because they were hearsay. He also maintains that his motions for a required finding of not guilty should have been allowed. Finally, he requests that we exercise our extraordinary power under G. L. c. 278, § 33E, to order a new trial. We conclude that armed home invasion was not a felony punishable by life imprisonment at the time of the instant offense, and, for that reason, reduce the conviction to murder in the second degree.[1] We have also considered the defendant's remaining claims in the event that they might entitle the defendant to a new trial. We conclude that they do not, and we decline to exercise our authority under G. L. c. 278, § 33E, to grant further relief.

The defendant was tried on a joint venture theory. The Commonwealth claimed that he and three other men had entered the Brockton apartment of Richard Anderlot on the evening of October 24, 1999, in an attempt to rob him. During the course

[1]The verdict slip contained an additional separate box for the felony of attempted armed robbery. The jury did not check this box. See *Commonwealth v. Carlino*, 449 Mass. 71, 76-80 (2007) (at retrial of defendant on charge of murder in first degree, principles of double jeopardy did not prohibit resubmission to jury of murder charge on felony-murder theory, where failure of jury in first trial to check box for felony-murder on verdict slip did not operate as acquittal on that theory). The Commonwealth does not seek to retry the defendant with attempted armed robbery as the predicate felony, and we express no opinion whether it could do so.

of the attempted armed robbery, Kenneth Taylor, one of the defendant's cohorts, shot and killed Anderlot. The evidence at trial was essentially the same as that at the trial of Taylor, see *Taylor* v. *Commonwealth*, 447 Mass. 49, 50-52 (2006), and need not be repeated here. To the extent necessary, we summarize the relevant evidence when we discuss each issue.

1. *Armed home invasion statute.* As stated, the defendant was convicted of murder in the first degree on a theory of felony-murder, with armed home invasion as the predicate offense. It is undisputed that the weapon used to perpetrate the crime was a firearm, a handgun. The defendant argues that his conviction of murder in the first degree was improper because, at the time of the incident, armed home invasion when committed with a firearm was not punishable by life imprisonment.

We start with the basic proposition that the predicate offense for a conviction of felony-murder in the first degree must be one "punishable with death or imprisonment for life." G. L. c. 265, § 1. See *Commonwealth* v. *Jackson*, 432 Mass. 82, 89 (2000). See also Model Jury Instructions on Homicide at 15-16 (1999).[2] Homicide committed during the commission or attempted commission of a felony punishable other than by death or life imprisonment is murder in the second degree, provided that the predicate felony is either "inherently dangerous" or, if not inherently dangerous, committed so that the circumstances demonstrate "the defendant's conscious disregard of the risk to human life." *Commonwealth* v. *Matchett*, 386 Mass. 492, 506, 508 (1982).

General Laws c. 265, § 18C, inserted by St. 1993, c. 333, provided as follows:

> "Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling

[2]The predicate felony for murder in the first degree must also be "inherently dangerous" or committed in a manner demonstrating that the defendant "consciously disregarded risk to human life." *Commonwealth* v. *Jackson*, 432 Mass. 82, 89 (2000), quoting *Commonwealth* v. *Moran*, 387 Mass. 644, 651 (1982). There is no issue in this case regarding the inherent dangerousness of armed home invasion.

place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years. The sentence imposed upon a person who, after having been convicted of violating any provision of this section, commits a second or subsequent offense under the provisions of this section shall not be suspended or placed on probation."

Thus, the commission of a home invasion while armed with any dangerous weapon could result in a life sentence. Had the statute remained in this form, there would be no question that the predicate felony in this case was one punishable by life imprisonment and thus a proper vehicle for obtaining a conviction of murder in the first degree.

But, in 1998, the Legislature amended the statute, adding, in pertinent part, the following language:

"Whoever commits said crime [armed home invasion] while being armed with a firearm, shotgun, rifle, machinegun, or assault weapon shall be punished by imprisonment in the state prison for 20 years. Said sentence shall not be reduced to less than ten years nor shall the person convicted be eligible for probation, parole, furlough, work release or receive any deduction from his sentence for good conduct . . . ."

St. 1998, c. 180, § 57.

This 1998 version of the statute was in effect on October 24, 1999, the date of the offense in this case. The plain language of the statute creates the anomalous situation in which armed home invasion committed by means of a dangerous weapon such as a knife was punishable by life imprisonment, but the same crime committed with a far more dangerous weapon, such as a firearm or a machine gun, could not be. We noted in *Commonwealth* v. *Brown*, 431 Mass. 772, 780 (2000), that the 1998 amendment to the armed home invasion statute was "lacking in coherence," "problematic for several reasons," and "appears to impose a

lesser penalty for a more serious offense (home invasion by one armed with the most dangerous weapons)." We concluded that these problems were "simply the result of a legislative oversight, one we cannot remedy," and we "invite[d] the Legislature to clarify [the statute]." *Id.* at 781.

Whether in response to our suggestion or otherwise, in 2004, the Legislature amended the armed home invasion statute by striking the penalty provision for the commission of the crime by means of a firearm, shotgun, rifle, machine gun, or assault weapon. This amendment made armed home invasion once again punishable by imprisonment in the State prison for life (or any term of not less than twenty years), regardless of the type of dangerous weapon employed. See St. 2004, c. 150, § 17.[3]

As the above history makes clear, the defendant's conviction of murder in the first degree is not legally permissible. Given that the maximum punishment for armed home invasion with a firearm was twenty years in October, 1999, the Commonwealth could not show that the homicide occurred in the course of a life felony, and therefore, the conviction was effectively based on insufficient evidence.

We recognize that it could be considered "absurd" to punish a crime committed with a firearm less harshly than the same crime committed with a different weapon. Cf. *Perry* v. *Commonwealth*, 438 Mass. 282, 286-287 (2002) ("It is absurd to believe that the Legislature intended that computer-stored child pornography could not be purchased or possessed but could be disseminated freely"); *Commonwealth* v. *Rahim*, 441 Mass. 273, 278 (2004) (court "need not adhere strictly to the statutory words if to do so would lead to an absurd result or contravene the clear intent of the Legislature"). The problem here is that we simply are unable to discern what the Legislature intended by the 1998 amendment. While the Legislature may have intended to punish a home invasion committed with a gun, rifle, or assault weapon more leniently than one committed with a knife, we are unable to determine what in fact the Legislature did

---

[3]This amendment also eliminated the language that prohibited reducing the sentence to less than ten years and forbade eligibility for, inter alia, probation, parole, and furlough. Compare St. 2004, c. 150, § 17, with St. 1998, c. 180, § 57.

intend by the change in the law. See *Commonwealth* v. *Brown,*
*supra* at 780-781. Nor can we resolve uncertainties in criminal
statutes in favor of the Commonwealth. "[O]rdinary rules of
statutory construction require us to construe any criminal statute
strictly against the Commonwealth." *Commonwealth* v. *Mar-*
*rone,* 387 Mass. 702, 706 (1982), quoting *Aldoupolis* v. *Com-*
*monwealth,* 386 Mass. 260, 267, cert. denied, 459 U.S. 864
(1982). We are thus left to apply the statute as written.

Because the jury convicted the defendant of murder in the
first degree and also found that the predicate felony was armed
home invasion, we reduce the verdict to murder in the second
degree. All the elements of that crime have been proved beyond
a reasonable doubt. The defendant committed a homicide during
the commission of a crime punishable by less than life imprison-
ment and said crime is an inherently dangerous one.[4]

2. *Defendant's statement to police.* Prior to trial, the defendant
filed a motion to suppress statements he made to the police in
September, 2000 (almost one year after the homicide), and after
an evidentiary hearing, the motion was denied. The motion
judge (who was not the trial judge) found that the defendant's
statements "were voluntary and made with a knowing, intel-
ligent and voluntary waiver of his Miranda rights." He also
determined beyond a reasonable doubt that "the defendant read
and understood the Miranda warnings and voluntarily agreed to
speak with the officers about the investigation until the point
when he said he needed an attorney." The judge found that the
officers immediately terminated the interview when the defendant
made that request. The defendant's inculpatory statements were
admitted at trial. They included the fact that he went to the
victim's apartment on the night of the murder with Joseph Coo-
per, Kenneth Taylor (whose photograph he identified for the

---

[4]The problem with the armed home invasion statute did not go unnoticed
during trial. When the issue was raised by the session clerk, the judge indicated
that she hoped that an appellate court reviewing a conviction, should there be
one, would be able to resolve the problem. Defense counsel did not object to
submitting the case to the jury on a theory of felony-murder, nor did he object
to the conviction based on that theory. It does not matter whether the claim of
error was preserved. The error clearly created a substantial likelihood of a
miscarriage of justice. See *Commonwealth* v. *Freeman,* 442 Mass. 779, 782
(2004).

police), and a third man named "Rizzo." The defendant stated that some of the men wore masks and that the plan was to rob the victim. He also said that he knew Taylor was carrying a gun.

On appeal, the defendant states that he challenges only the judge's findings on voluntariness. He claims that his educational and mental deficits "called into question the voluntariness of the [d]efendant's custodial statements." If the defendant is asserting a voluntariness objection, the Commonwealth must prove beyond a reasonable doubt that the statement was voluntary. *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). "A statement is voluntary if it is the product of a 'rational intellect' and a 'free will.' " *Commonwealth* v. *Selby*, 420 Mass. 656, 662 (1995), quoting *Commonwealth* v. *Davis*, 403 Mass. 575, 581 (1988). To determine whether a defendant made his statement voluntarily, a judge examines whether, "in light of the totality of the circumstances . . . the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act." *Id.* at 663. All of the relevant circumstances surrounding the statement and the individual characteristics and conduct of the defendant are considered. *Commonwealth* v. *Parker*, 402 Mass. 333, 340 (1988). Relevant factors include, but are not limited to, the "conduct of the defendant, the defendant's age, education, intelligence and emotional stability, . . . physical and mental condition, . . . and the details of the interrogation, including the recitation of Miranda warnings." *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986).

In reviewing a judge's ruling on a motion to suppress, we give substantial deference to the judge's ultimate findings, and we accept the judge's subsidiary findings unless they are clearly erroneous. *Commonwealth* v. *Cunningham*, 405 Mass. 646, 655 (1989), citing *Commonwealth* v. *Tavares*, *supra* at 144-145. A finding is clearly erroneous if it is not supported by the evidence, see *Commonwealth* v. *Tavares*, *supra* at 145, or when the reviewing court, on the entire record, is left with the firm conviction that a mistake has been committed. *Id.* at 156. Here, the evidence supports the judge's finding of voluntariness.

If the defendant is claiming that his waiver of Miranda rights

was not a knowing and intelligent one, the judge's findings indicate specifically that the judge reached his conclusion after reviewing the defendant's school records, evaluation notes and his lengthy history of special education services. The judge's conclusion that the defendant's statements were voluntary and made after a "knowing, intelligent and voluntary waiver of his Miranda rights" are supported by the evidence and are warranted. There was no error.

The police made no attempt to record the interview. Because the trial took place after our decision in *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447-449 (2004), the judge instructed the jury pursuant to our holding in that case.[5] She informed the jury both at the time the statements were admitted and in her final instructions that this court has expressed a preference for such interrogations to be recorded and that, because of the absence of such a recording, the jury should weigh evidence of the alleged statements with great caution and care. See *id*. She also gave an appropriate instruction on voluntariness. The defendant argues that we should make electronic recording of a defendant's statement a prerequisite to its admissibility. We declined to adopt a per se rule of exclusion three years ago when we decided the *DiGiambattista* case. Our reasons for rejecting a per se exclusionary rule remain as valid today as they did then.

3. *Statements of coventurers.* The defendant filed a motion in limine to exclude statements made by his joint venturers, Joseph Cooper and Kenneth Taylor, in an apartment to which the three men fled after the murder. (The fourth man involved in the shooting did not join them at the apartment.) The motion was denied, and, over objection, a young woman, Natasha Nelson, who heard the statements, was permitted to testify to the conversation. She testified that Cooper asked Taylor, "Why did [you] do what [you] did?" Taylor answered that the victim was holding a telephone and he thought the victim was talking to

[5]As mentioned, the interview took place in September, 2000. This was almost four years before our decision in *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447-449 (2004), and trial took place in August, 2005, after the *DiGiambattista* decision. The *DiGiambattista* court stated that there was no "need to postpone the implementation of our decision," *id*. at 449, and so mandated the instruction in all future trials.

the police so he shot him in the arm. He added that the victim then ran behind the couch without letting go of the telephone, so he shot him twice more. At some point shortly thereafter, Nelson saw Taylor go into a bedroom and put an item (inferentially the murder weapon) under a mattress. The defendant claims that this conversation is inadmissible hearsay because the joint venture had ended by that time and the conversation did not further the goals of the venture. Out-of-court statements by joint venturers are admissible against the others if the statements are made during the pendency of the criminal enterprise and in furtherance of it. See *Commonwealth* v. *Braley*, 449 Mass. 316, 319 (2007). The venture was continuing at the time of the conversation. The three men had fled to the apartment directly from the murder scene. In fact, the defendant gave the driver directions for getting there. After the conversation, Taylor hid the murder weapon. Thus, the conversation took place immediately after the murder when three of the joint venturers were still together, discussing what had happened, and when the murder weapon was hidden in an effort to evade detection. It is a fair inference that when Taylor deviated from the robbery plan an angry Cooper was demanding an explanation. The two men were sharing information, as were the codefendants in *Commonwealth* v. *Wright*, 444 Mass. 576, 580-581 (2005). In addition, the judge promptly and properly instructed the jury that they could consider the statements only if they found the existence of a joint venture apart from the statements, and that the statements were made in furtherance of that venture. See *Commonwealth* v. *Cruz*, 430 Mass. 838, 844-846 (2000).

The defendant alleges also that his right to confront his accusers was violated by the admission of these statements. See *Crawford* v. *Washington*, 541 U.S. 36, 53-54 (2004) (confrontation clause of Sixth Amendment to the United States Constitution precludes admission of testimonial statements of nontestifying witness, absent showing witness unavailable and defendant had prior opportunity for cross-examination). The defendant, however, ignores our holding in *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 7-15 (2005), cert. denied, 126 S. Ct. 2982 (2006), where we explained that the confrontation clause does not bar the admission of statements that a reasonable person in the

position of the declarant would not objectively foresee as being used in the investigation or prosecution of a crime. *Id.* at 12-13. Certainly, just after the murder, in the privacy of an apartment, neither Cooper nor Taylor would have reasonably foreseen their statements being used in the investigation or prosecution of a crime. Many other jurisdictions have reached a similar conclusion, holding in general that statements of joint venturers (or coperpetrators or coconspirators) are the type of remarks that the *Crawford* Court deemed nontestimonial.[6] See *Crawford* v. *Washington, supra* at 56 ("statements in furtherance of a conspiracy" not testimonial). There was no error in the admission of the statements.

4. *Motions for a required finding of not guilty.* At the close of the Commonwealth's evidence and again at the close of all the evidence, the defendant moved for a required finding of not guilty. Both motions were denied. The defendant contends on appeal that the denials were improper, claiming that there was no evidence the defendant had "any advance knowledge that a crime would take place in the apartment that night, that he actually entered the apartment, or that he even meaningfully participated in any way as a joint venturer in the commission of the crime." The defendant ignores the incriminating statements that he made to the police in which he stated that the group planned to commit a robbery and that he believed that it was Taylor's idea. The defendant also stated that, before going to the victim's apartment, he had heard that Taylor was carrying a weapon, but that he did not actually see the gun until they approached the apartment. These statements alone provide a rational fact finder with evidence from which to conclude that the defendant knew that Taylor was armed and shared the intent to rob the victim.

There was additional incriminating evidence as well. The defendant indicated to the police that some people were masked,

[6]See, e.g., *United States* v. *Stover*, 474 F.3d 904, 913 (6th Cir.), cert. denied, 128 S. Ct. 142 (2007); *United States* v. *Hansen*, 434 F.3d 92, 100 (1st Cir.), cert. denied, 127 S. Ct. 203 (2006); *United States* v. *Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005), cert. denied, 547 U.S. 1012 (2006); *State* v. *Camacho*, 282 Conn. 328, 351, cert. denied, 128 S. Ct. 388 (2007); *Shelton* v. *State*, 279 Ga. 161, 163 (2005); *State* v. *Jackson*, 280 Kan. 16, 34-35 (2005), cert. denied, 546 U.S. 1184 (2006); *State* v. *Day*, 925 A.2d 962, 982 (R.I. 2007).

and testimony of other witnesses confirmed that at least two of the armed intruders were wearing masks. In addition, the defendant directed the group to the apartment where they went after the murder. Finally, there was evidence that a few weeks later, the defendant told Nelson that the person whose apartment they had gone to after the killing was talking and needed to be silenced. The motions were properly denied.

5. *Relief under G. L. c. 278, § 33E.* Having reviewed the entire record, we discern no other reason to exercise our extraordinary power pursuant to G. L. c. 278, § 33E, to order a new trial or further reduce the verdict. The case is remanded to the Superior Court for the entry of a verdict of guilty of murder in the second degree, and for the imposition of a sentence of "imprisonment in the [S]tate prison for life," as provided in G. L. c. 265, § 2.

*So ordered.*