ALBERT BERRY vs. COMMONWEALTH & another.[1]

Suffolk.   October 3, 1984. — January 31, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Double jeopardy, Mistrial, Required find-
ing. *Constitutional Law,* Double jeopardy. *Supreme Judicial Court,*
Superintendence of inferior courts.

A defendant on trial for the murder of his twenty month old daughter was
   entitled to a required finding of not guilty of both murder and manslaugh-
   ter where, upon the evidence, the defendant's guilt was left to specula-
   tion, it appearing that the child's mother had had an equal opportunity
   to kill her, was as capable as the defendant of striking the fatal blows,
   and was no less disposed to harm the victim. [794-796]
Common law principles of double jeopardy barred the retrial of a criminal
   defendant following the inability of the jury at his trial in the Superior
   Court to agree upon a verdict, where this court, in a proceeding brought
   by the defendant under G. L. c. 211, § 3, concluded that the trial judge
   had erred in denying the defendant's motion for a required finding of
   not guilty based upon the legal insufficiency of the evidence to convict
   him. [796-799]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on April 13, 1984.

The case was reported by *Nolan,* J.

*Michael Avery* for the plaintiff.

*Michael J. Traft,* Assistant District Attorney, for the Com-
monwealth.

O'CONNOR, J.   Albert Berry was indicted for the murder in
the first degree of his twenty month old daughter. A jury trial
followed. At the conclusion of the Commonwealth's case,
Berry moved for a required finding of not guilty. The judge
allowed the motion as to murder in the first degree, but he
denied it as to murder in the second degree and manslaughter.

---

[1] The Superior Court.

After the defense presented its case, the judge submitted the case to the jury. The jury deliberated for four days without reaching a verdict, and, without objection by Berry, the judge declared a mistrial. As the Commonwealth prepared to retry Berry, he filed in the Superior Court a motion to dismiss the indictment on the ground of double jeopardy. A judge denied Berry's motion, and Berry sought relief from a single justice of this court. The single justice stayed the Superior Court proceedings and reserved and reported the case to the full bench without decision. We remand the case to the Supreme Judicial Court for the county of Suffolk for entry of a judgment directing that the indictment be dismissed.

Berry concedes that, if the Commonwealth presents evidence legally sufficient to convict, double jeopardy principles do not bar retrial after a mistrial declared because of a "hung jury." *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974). Berry argues, however, that in this case the Commonwealth did not present sufficient evidence, and that, therefore, double jeopardy principles do not allow the Commonwealth a second chance. We agree.

In making a determination whether the Commonwealth presented sufficient evidence to warrant a finding of guilt, "[the] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia,* 443 U.S. 307, 319 (1979). Based on the evidence most favorable to the Commonwealth, the jury could have found the following facts. The victim, Shurasha Campbell, twenty months old when she died, suffered many injuries throughout her short life. She lived in an apartment on Columbia Road in the Dorchester section of Boston with her mother, Dorothy Campbell, Campbell's other daughter, Natasha, and Berry. Berry stands 6 feet, 2 inches tall and weighs 160 pounds. Campbell is 5 feet, 2 inches tall and weighs 100 pounds. Berry knows martial arts.

Before moving to Columbia Road, the family lived on the first floor of a house on Blakeville Street. One day in the late spring or early summer of 1981, the son of the occupant of the second floor visited the house. He heard Shurasha crying downstairs for 30 to 45 minutes. Berry yelled, "Shut up. Shut up. Shut up," and then there was a loud thud. After that, the baby cried loudly as if in pain.

On June 4, 1982, Berry went into a room of his apartment where Shurasha was crying. Natasha heard what sounded like "somebody hitting," and the crying stopped.

On June 5, 1982, the day of Shurasha's death, Berry remained in the apartment with Shurasha and Campbell until 11 A.M. At about 1 P.M. Campbell carried Shurasha, unconscious, out of the apartment. Later that evening, doctors pronounced Shurasha dead.

Dr. George Curtis, who performed an autopsy on Shurasha, testified that she died from injuries caused by blows of "great," "severe" force, and that such blows were "consistent with karate or martial-art-type blows."

The Commonwealth argues that "[i]t was up to the jury to decide which of the persons in the household caused Shurasha's death, as there was no question that she died from a severe beating, and no question that someone had to have administered the beating to her."[2] Relying on *Commonwealth* v. *Hunter,* 18 Mass. App. Ct. 217, 219 (1984), the Commonwealth further argues that it need not prove that no one other than the defendant could have performed the act.

"We are . . . mindful that '[i]n order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime.' *Commonwealth* v. *Leach,* 156 Mass. 99, 101-102 [1892]. It is, however, equally well established that 'if, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise and has no solid foun-

---

[2] We note that the police arrested Dorothy Campbell for Shurasha's murder before they arrested Berry. The Commonwealth intended to try Berry and Campbell together, but the trial judge allowed Berry's motion to sever his trial from Campbell's.

dation in established facts, a verdict of guilty cannot stand.' *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401 [1940]. When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. *Commonwealth* v. *Carter,* 306 Mass. 141, 147 [1940]. *Commonwealth* v. *Smith,* 342 Mass. 180, 183 [1961]." *Commonwealth* v. *Fancy,* 349 Mass. 196, 200 (1965).

Even if, contrary to Berry's argument, the evidence warrants a finding that Berry had the opportunity to kill Shurasha, the additional evidence that Berry had struck her on two earlier occasions, and that he had the capability to strike her with great force "consistent with karate or martial-art-type blows," is not enough to warrant a finding beyond a reasonable doubt that he, and not Campbell, killed her. For all that appears, Campbell had equal opportunity to kill Shurasha, was fully capable of striking her with great force consistent with karate or the martial arts, and was as disposed as Berry was to do so. Whether Berry killed Shurasha is, on the evidence, speculative. We conclude that no rational trier of fact could have found Berry guilty of murder or manslaughter. Before the judge gave the case to the jury, Berry moved for a required finding of not guilty, and, after the judge declared the mistrial, Berry moved for dismissal of his indictment. Under those circumstances, common law double jeopardy principles bar his retrial.

In order for a defendant to be placed twice in jeopardy, his original jeopardy must have terminated. Whether the defendant's jeopardy has terminated depends on whether, in light of double jeopardy policies and principles, the proceedings against him have reached a point at which they should cease. "Even if [a] first trial is not completed [because the judge declares a mistrial], a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the

prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Arizona* v. *Washington,* 434 U.S. 497, 503-505 (1978). However, a defendant's right not to be retried is subordinate to "society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Id.* at 509. See *Thames* v. *Commonwealth, supra.*

In this case, the Commonwealth has had one full opportunity to obtain Berry's conviction. It presented all the available evidence it chose to present. On the basis of that evidence, acquittal was required as a matter of law. In those circumstances, the Commonwealth cannot fairly complain that the judge's declaration of a mistrial when the jury could not agree deprived it of its opportunity to obtain a conviction. The jury could not legally have reached any verdict but not guilty. Application of the general rule prohibiting repeated trials for the same offense gives to Berry the protection that double jeopardy principles are supposed to give, while visiting no concomitant unfairness on the Commonwealth. "Since we necessarily afford absolute finality to a jury's *verdict* of acquittal — no matter how erroneous its decision — it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty. . . . Given the requirements for entry of a judgment of acquittal, the purposes of the [common law of double jeopardy] would be negated were we to afford the government an opportunity for the proverbial 'second bite at the apple.'" *Burks* v. *United States,* 437 U.S. 1, 16-17 (1978). (Emphasis in original.)

If the jury had found Berry guilty, Berry could have appealed his conviction and obtained a determination of the legal insufficiency of the evidence against him and, because the double jeopardy clause of the United States Constitution[3] precludes a second trial once a reviewing court has found the evidence

---

[3] The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

legally insufficient, *Burks* v. *United States, supra* at 18, the Commonwealth could not have retried Berry. The Commonwealth should not be in a better position, nor Berry in a worse position, because the Commonwealth could not persuade the jury of Berry's guilt.

We hold, therefore, that when the Commonwealth has failed to present evidence legally sufficient to support a conviction, and the defendant has moved for a required finding of not guilty, jeopardy terminates when a judge declares a mistrial after the jury fails to agree on a verdict. Furthermore, because double jeopardy principles prohibit *trying* a defendant twice for the same offense, see *Lydon* v. *Commonwealth,* 381 Mass. 356, 360 n.7, cert. denied, 449 U.S. 1065 (1980); *Costarelli* v. *Commonwealth,* 374 Mass. 677, 680 (1978), the defendant is entitled to a review of the legal sufficiency of the evidence before another trial takes place.

In *Richardson* v. *United States,* 468 U.S. 317 (1984), the Supreme Court declared itself "unwilling to [extend] the reasoning of *Burks* v. *United States, supra,* which arose out of an appellate finding of insufficiency of evidence to convict following a jury verdict of guilty, to a situation where the jury is unable to agree on a verdict." *Id.* at 324. The Court held that after a mistrial because of a hung jury a defendant has no valid claim based on the double jeopardy clause regardless of the sufficiency of the evidence at that trial. *Id.* Thus, even after retrial resulting in conviction, the double jeopardy clause does not entitle a defendant to a review of the sufficiency of the evidence at the first trial.

But Berry does not rely on the double jeopardy clause, and we are unwilling to limit double jeopardy protection to that afforded by the double jeopardy clause under *Richardson.* "[P]rotection against double jeopardy in this Commonwealth has long been part of the common law." *Lydon* v. *Commonwealth, supra* at 366. *Thames* v. *Commonwealth, supra* at 479. *Gallinaro* v. *Commonwealth,* 362 Mass. 728, 736-737 (1973). Common law principles may provide greater protections than either the State or the Federal Constitution requires. Such is the case here.

If we are to meet the concerns that underlie double jeopardy principles, we should not hold, as the Supreme Court did, that jeopardy terminates only if, after a conviction, a reviewing court determines that the evidence presented at a defendant's trial was legally insufficient to warrant that result. We must, and we do, hold that jeopardy also terminates when the Commonwealth fails to present evidence legally sufficient to convict, the defendant moves for a required finding of not guilty, and the judge declares a mistrial after the jury has failed to agree on a verdict.

We do not know how many criminal trials in this Commonwealth end in mistrials each year because of hung juries. We do not know in how many of those cases the defendant could present a reasonable double jeopardy claim. Nor do we know how many of those cases the Commonwealth would wish to retry. If our holding today increases judicial business, that result must be accepted. Courts exist to vindicate important rights. We cannot withhold from criminal defendants important protections merely because granting them may place some additional burden on the courts. See *Abney* v. *United States*, 431 U.S. 651, 662 n.8 (1977).

We make a final observation. Our decision today has no effect on the operation of the two-tier trial system in effect in our District and Municipal Courts. We adhere to the view we expressed in *Lydon* v. *Commonwealth, supra* at 359-360, that a defendant is not placed in double jeopardy merely because his only avenue of relief from a conviction based on insufficient evidence at a voluntarily sought bench trial is a trial de novo. See G. L. c. 218, § 26A, inserted by St. 1978, c. 478, § 188. "[I]n a traditional trial system, an event that ends the first proceeding, such as the declaration of a mistrial, has significance in terms of the policies underlying [double jeopardy protection] that it does not have in the two-tier context." *Richardson, supra* at 329 n.1 (Brennan, J., concurring in part and dissenting in part). As we concluded in *Lydon, supra,* and for the reasons we stated therein, a defendant's "voluntary choice of a bench trial and subsequent choice of a trial de novo create a situation in which double jeopardy is not implicated." *Id.* at 359-360.

Because the evidence at Berry's trial was legally insufficient to warrant his conviction of any crime charged in the indictment, and because Berry raised the issue by moving for a required finding of not guilty, he is entitled to dismissal of the indictment. A judgment is to enter in the Supreme Judicial Court for the county of Suffolk directing that the indictment be dismissed.

*So ordered.*