JULIO PENA *vs.* COMMONWEALTH. February 13, 1998. *Supreme Judicial Court, Superintendence of inferior courts, Appeal from order of single justice. Practice, Criminal*, Double jeopardy. *Constitutional Law*, Double jeopardy. *Controlled Substances.*

Julio Pena (defendant) appeals from a judgment of a single justice of this court denying, without a hearing, his petition for relief under G. L. c. 211, § 3. We affirm the judgment.

In July of 1996, the defendant was tried on an indictment charging trafficking in cocaine weighing 200 grams or more. At trial, the defendant unsuccessfully moved for a required finding of not guilty at the close of the Commonwealth's case and at the close of all the evidence. Following three days of trial, the jury were unable to reach a unanimous verdict and the judge declared a mistrial.

Rather than filing a motion to dismiss in the trial court, the defendant instead sought relief from a single justice of this court claiming that double jeopardy principles barred a retrial of the same charges because the Commonwealth's evidence was legally insufficient. See *Neverson* v. *Com-*

monwealth, 406 Mass. 174, 175-176 (1989). The single justice denied the defendant's petition for relief and the defendant appealed from the judgment, purportedly pursuant to S.J.C. Rule 2:21, 421 Mass. 1303 (1995). On April 4, 1997, we issued an order stating that rule 2:21 was inapplicable and we allowed the defendant to proceed with his appeal in the ordinary course.

Because the defendant failed to file a motion to dismiss in the trial court, his appeal is premature, and therefore, improperly before us.[1] We have previously made clear that "[t]he petition may not be filed until after the Commonwealth seeks to put the defendant on trial a second time, the defendant files a motion to dismiss, and the judge denies the motion to dismiss." *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 3 (1987). See *Commonwealth* v. *Ginnetti*, 400 Mass. 181, 182-183 (1987). That notwithstanding, we exercise our discretion and address the merits of the defendant's claim where it has been fully briefed by both parties and the single justice did not deny the petition on this ground.[2] See *Commonwealth* v. *Chatfield-Taylor*, *supra*, and cases cited.

Double jeopardy principles do not bar a retrial after a mistrial is declared because of a "hung jury," if the Commonwealth presented evidence legally sufficient to convict. *Berry* v. *Commonwealth*, 393 Mass. 793, 794 (1985). *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974). In determining whether the Commonwealth's evidence was sufficient to warrant a finding of guilty, "[the] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979). See *Berry* v. *Commonwealth*, *supra*. Based on the evidence most favorable to the Commonwealth, the jury would have been warranted in finding the following facts.

On November 9, 1993, at about 5:30 A.M., police officers from Brockton and the State police executed a search warrant at 4 West Park Street in Brockton. While police were gaining entry into the apartment, Detective James Eaton observed the defendant get up from the bed, go into the kitchen, and return to the bedroom and lie down with his hands behind his head "like he would be watching television." The defendant was the only person present in

---

[1] We also note that there is no indication from the record whether the Commonwealth took any affirmative steps toward retrying the defendant before he filed his petition under G. L. c. 211, § 3. We assume that this is the Commonwealth's intention by virtue of its opposition to the defendant's petition.

[2] The importance of first exhausting all avenues for relief in the trial court cannot be overlooked where, as here, filing a motion to dismiss might not be a futile gesture. Despite denying the defendant's motions for a required finding of not guilty, the trial judge indicated that the Commonwealth's case was "weak" and "a close case." The judge may have ruled differently on a motion to dismiss after the jury could not reach an unanimous decision.

Accordingly, although we have permitted this defendant to pursue his appeal despite its procedural unsoundness, this practice cannot continue indefinitely. To do so renders our previous decisions, which clearly set forth the proper procedure under these circumstances, meaningless. After the date of this opinion, we will hold a defendant to the dictates of *Commonwealth* v. *Ginnetti*, 400 Mass. 181 (1987), and *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1 (1987), and do not intend to reach the merits of any claim of this type which is not properly before us.

the apartment at the time of the search, but he told an officer that he lived in the apartment with his brother, Oscar Pena.[3]

On the night stand in the bedroom, within arm's reach of the defendant, were "three pages of notations," a pager and $100 cash. Detective Arthur MacClaren testified that, in his opinion, the notations on the last page represented "money owed to the parties dealing in the cocaine." He further opined that pagers were often used by customers to page drug suppliers.

After being advised of his Miranda rights, the defendant denied that there was any cocaine in the apartment. However, a narcotics canine made a "hit" on an old china closet located across from the bed where the defendant was found. The police pried open a loose "header board" inside the closet and found a small digital scale, $3,295 in cash, and a clear plastic bag which contained fourteen bags of 64% pure crack cocaine weighing 345.96 grams and five smaller bags containing 16.91 grams of 58% pure crack cocaine.

The search of the second bedroom, which was sparsely furnished, produced the following evidence: (1) three cellular phones and a cellular phone bill in the name of Oscar Pena; (2) a "dog tag type" chain with the defendant's name inscribed on it located on a small shelf; and (3) a sifter, a cutting agent, and baggies all located on the same shelf with the defendant's necklace. The search of the kitchen yielded two documents containing the defendant's name: a parking violation notice, dated September 9, 1993, and an invoice dated November 1, 1993. A "Spanish speaking calculator" was also found on the kitchen table.

The defendant was arrested and booked and an inventory of his personal property was taken at the Brockton police station. Within the defendant's personal belongings were over $1,600 in United States currency in his wallet and an invoice, dated August 3, 1993, with the defendant's name and listing his address as 4 Warren Street in Brockton. Officer John Luciano testified that no such address existed in Brockton. A small address book containing twenty-two telephone numbers, all consistent with Brockton telephone exchanges, was also found inside the defendant's wallet.[4]

After the booking was complete, the defendant made a telephone call within a few feet of the booking desk. Officer Luciano, who was standing nearby, overheard the defendant make statements to the other party to "get that what was left" or "get that what was not found . . . or that they [the police] did not find."

This evidence, coupled with all reasonable inferences that can be drawn from it, was sufficient to submit the case to the jury. The presence of common drug paraphernalia throughout the apartment, some within arm's reach of the defendant or in immediate proximity to his personal belongings, adequately demonstrates his presence and knowledge of the cocaine in the apartment. "While presence in an area where contraband is found 'alone cannot show the requisite knowledge, power, or intention to exercise control over the [contraband], . . . presence, supplemented by other incriminating evidence,

---

[3]The defendant testified at trial that he had never been to Massachusetts before that evening, and he was only staying at his brother's apartment on his way to visit a woman in Lawrence the following day.

[4]The defendant testified that the telephone numbers in the address book were all Santo Domingo telephone numbers.

"will serve to tip the scale in favor of sufficiency." ' " *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409-410 (1989), quoting *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977).

Although the Commonwealth's case is not overwhelmingly strong, we conclude that the scales are nevertheless tipped in favor of sufficiency by two significant factors. First, the defendant was arrested with a large amount of cash on his person. This evidence strongly suggests his direct participation in the drug distribution. See *Commonwealth* v. *Clermy*, 421 Mass. 325, 331 (1995) (moderate amount of cash and telephone beeper are "both traditional accoutrements of the illegal drug trade"). See also *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758-759 (1984). Second, it can reasonably be inferred that the defendant's telephone conversation at the police station pertained to the existence of and, more importantly, his concern for additional drugs at the apartment that were not discovered during the search by the police.

The inferences the Commonwealth suggests are "reasonable and possible; [they] need not be necessary or inescapable." *Commonwealth* v. *Gilbert*, 423 Mass. 863, 868 (1996), quoting *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). To the extent the defendant offered alternative explanations at trial for most of this incriminating evidence, it was best left to the jury to find the truth. *Koonce* v. *Commonwealth*, 412 Mass. 71, 75 (1992). The trial judge did not err in denying the defendant's motions for required findings of not guilty. Consequently, double jeopardy concerns are not implicated in the event the Commonwealth elects to retry the defendant.

The judgment entered in the county court denying the defendant's petition is affirmed.

*So ordered.*

*Ronald Ian Segal* (*Stephen D. Judge* with him) for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.