## Frances Choy *vs.* Commonwealth.

Suffolk. September 10, 2009. - February 22, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Burning a Dwelling House. Homicide. Constitutional Law,* Double jeopardy.
*Joint Enterprise. Practice, Criminal,* Capital case, Mistrial, Double jeopardy,
Question by jury. *Evidence,* Joint enterprise. ·

This court concluded that retrial of indictments charging the defendant with
arson and murder in the first degree would not violate the prohibition
against double jeopardy, where the evidence at the first trial (which ended
in a mistrial when the jury were unable to reach a unanimous verdict),
viewed in the light most favorable to the Commonwealth, was sufficient to
permit a rational jury to conclude that the defendant set the fire that killed
her parents, and that the killings were premeditated or committed with
extreme atrocity or cruelty [149-151]; further, this court concluded that the
judge's erroneous answer to a question from the jury did not bar retrial,
where there was no evidence that the judge acted in bad faith [151-152].
This court declined to reach the issue whether the protection against double
jeopardy would prohibit the Commonwealth, at the retrial of indictments
charging the defendant with arson and murder in the first degree, from
pursuing a joint venture theory where the Commonwealth did not do so in
the original trial. [152-154] Cowin, J., dissenting, with whom Spina, J.,
joined.

Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on May 12, 2008.

The case was considered by *Greaney,* J.

*Joseph F. Krowski* for the plaintiff.

*John E. Bradley*, Assistant District Attorney (*Karen O'Sulli-
van*, Assistant District Attorney, with him) for the Common-
wealth.

Botsford, J. Frances Choy (defendant) was tried in the Su-
perior Court on one indictment charging arson, G. L. c. 266,
§ 1, and two indictments charging murder in the first degree,
G. L. c. 265, § 1. At trial, the Commonwealth proceeded on the
premise that the defendant was guilty as the principal, and did
not introduce evidence that the defendant was guilty as a joint
venturer. Consequently, the jury were instructed as to principal,
but not joint venture, liability. Her trial ended in a mistrial when

the jury were unable to reach a unanimous verdict. Following the mistrial, the defendant moved to dismiss all the indictments on the ground that the evidence at trial had been insufficient to warrant her conviction of either crime, and therefore that a retrial would violate the double jeopardy protections of the Fifth Amendment to the United States Constitution[1] and Massachusetts common law.[2] The trial judge denied the motion. The defendant then sought relief from a single justice of this court pursuant to G. L. c. 211, § 3.[3] The single justice denied the petition without a hearing, and the defendant now appeals the denial to the full court.

In her appeal, the defendant continues to claim that her right to be free of double jeopardy prohibits her retrial as a principal. She argues in the alternative that, even if double jeopardy does not prohibit retrial categorically, the Commonwealth is precluded from now relying on a joint venture theory after failing to pursue it at the first trial.[4] We reject the defendant's argument that she cannot be retried at all, and for reasons we discuss, we do not decide the double jeopardy issue raised by the defendant's alternative argument.

1. *Background.* We summarize the facts in the light most favorable to the prosecution. In April of 2003, the defendant was a high school senior residing at 102 Belair Street in Brockton. Living with her at that address were her parents and her nephew, Kenneth Choy. At approximately 5 A.M. on April 17, Brockton

[1]The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be twice put in jeopardy of life or limb." This prohibition applies to State governments through the Fourteenth Amendment to the United States Constitution. *Benton* v. *Maryland*, 395 U.S. 784, 794 (1969).

[2]Although not explicitly enumerated in the Massachusetts Declaration of Rights, protection against double jeopardy has long been a part of Massachusetts common and statutory law. *Commonwealth* v. *Woods*, 414 Mass. 343, 346, cert. denied, 510 U.S. 815 (1993). See G. L. c. 263, § 7 (codifying protection against double jeopardy).

[3]A defendant raising "a double jeopardy claim of substantial merit" is entitled to appellate review of that claim before the second trial commences. *Neverson* v. *Commonwealth*, 406 Mass. 174, 175 (1989). The proper mechanism for obtaining such review is initiated by a petition to a single justice of this court pursuant to the provisions of G. L. c. 211, § 3. *Id.*

[4]In addition, the defendant argues that retrying her on a joint venture theory is barred by judicial estoppel and would create an impermissible variance with the indictment. We discuss these issues *infra.*

fire fighters responded to the defendant's 911 call reporting a fire in the home. The first fire fighters to arrive at the scene observed smoke rising out of the residence and Kenneth Choy looking out a second-floor window. Using a ladder, the fire fighters assisted Kenneth Choy out of the house. They then saw the defendant's head leaning out a different second-story window. When fire fighters asked if there was anyone left inside the house, the defendant responded that her parents remained in the building. The defendant did not appear upset and displayed no visible signs of injury.

Fire fighters entered the building to attempt to rescue Jimmy and Anne Choy. Fire Fighter Brian Nardelli entered the master bedroom and found Anne Choy lying on the bed. He removed her from the house and returned to the bedroom. On his second trip, he found Jimmy Choy lying on the floor between the bed and the window and removed him from the building. Paramedics began medical treatment of the victims immediately. The victims were hospitalized and each died that day as a result of smoke inhalation and burns.

Expert testimony from Sergeant Jeanne Stewart, a State police fire investigator, indicated that the fire was set intentionally and appeared to be designed to spread toward the master bedroom. Additionally, fire investigators found gasoline throughout the house and on the defendant's sweatpants. A State police sergeant testified that the defendant told him that she resented her parents because they prevented her from spending time with her boy friend, assigned her extensive chores, and planned to force her to live at home when she entered college. Additionally, she told the officer that she believed she was the beneficiary of a life insurance policy purchased by her parents. A Brockton police officer testified that on two occasions the defendant admitted that she planned the fire and placed containers of gasoline throughout the house, but on both occasions she immediately retracted her statement.

A grand jury indicted the defendant on charges of arson and murder. The grand jury also returned two indictments against Kenneth Choy charging murder. A judge in the Superior Court severed their trials. He also allowed the Commonwealth's motion in limine to exclude Kenneth Choy's handwritten notes from evidence at the defendant's trial. Those notes, found in his

bedroom after the fire, contained a step-by-step checklist on how to set the house on fire. He told police that he made the notes at the defendant's request as part of a joint plan to set fire to their home.

During deliberations, the jury submitted a question asking if a guilty verdict required them to find that the defendant started the fire herself. The judge answered, "No," over the defendant's objection. Eventually, the jury reported that they could not reach a verdict, and the judge declared a mistrial. Following the mistrial, the defendant moved to dismiss all indictments on the ground that a retrial would violate the double jeopardy protections of the United States Constitution and Massachusetts common and statutory law.[5] The judge denied the motion.

*2. Sufficiency of the evidence.* The defendant maintains that the prohibition against double jeopardy prevents the Commonwealth from trying her a second time because the evidence presented at her first trial was insufficient to establish her guilt. She argues that her renounced confession, the gasoline vapors on her clothing, and her demeanor in interactions with police officers are an insufficient basis from which a jury could find that she set the fire. In addition, the defense points to evidence at trial that the defendant telephoned 911 and was in danger from the fire. Furthermore, she suggests that the evidence shows that Kenneth, not she, was the party responsible for setting the fire. We conclude that the evidence was sufficient to support convictions of arson and murder.

The United States Constitution and Massachusetts common and statutory law protect criminal defendants from being twice placed in jeopardy for the same crime. *Benton* v. *Maryland*, 395 U.S. 784, 793-796 (1969). *Commonwealth* v. *Cassidy*, 410 Mass. 174, 176 (1991). However, the protection against double jeopardy permits a second trial where the first trial terminates in a mistrial due to "manifest necessity." *Oregon* v. *Kennedy*, 456 U.S. 667, 672 (1982). The jury's failure to reach a unanimous verdict is an example of manifest necessity. *Commonwealth* v. *Andrews*, 403 Mass. 441, 448-449 (1988). There is, however, an exception to the rule that a defendant can be retried after a mistrial resulting from a jury's failure to reach a verdict when

---

[5]The defendant also claimed that the Commonwealth was judicially estopped from retrying her as a joint venturer.

the evidence presented in the first trial was insufficient to sustain a conviction. In such cases, the defendant is entitled to a judgment directing that the indictment be dismissed. *Berry* v. *Commonwealth*, 393 Mass. 793, 794 (1985).[6] Accordingly, we must examine the evidence presented at the defendant's trial to determine if it was sufficient to support a guilty verdict.

In reviewing the sufficiency of the evidence, we determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). Murder is defined as the "unlawful killing of a human being with malice aforethought." *Commonwealth* v. *Campbell*, 375 Mass. 308, 312 (1978). A murder qualifies as murder in the first degree if it is committed with "deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life." G. L. c. 265, § 1. Arson occurs when someone "wilfully and maliciously sets fire to, burns, or causes to be burned, or . . . aids, counsels or procures the burning of, a dwelling house." G. L. c. 266, § 1. We are mindful that in arson cases the Commonwealth often can prove guilt "only by a 'web of circumstantial evidence' that entwines the suspect in guilt beyond a reasonable doubt." *Commonwealth* v. *Robinson*, 34 Mass. App. Ct. 610, 617 (1993), quoting *Commonwealth* v. *Blonde*, 29 Mass. App. Ct. 914, 916 (1990).

We conclude that a rational jury could determine, based on the evidence the Commonwealth presented at trial, that the defendant set the fire that killed Jimmy Choy and Anne Choy. The evidence supported a finding that the fire was set intentionally by the use of gasoline. Fire investigators found gasoline on the defendant's sweatpants. There was evidence, the credibility and weight of

---

[6]The Commonwealth urges that we revisit our holding in *Berry* v. *Commonwealth*, 393 Mass. 793, 798 (1985), allowing appellate review of the sufficiency of the evidence, after a mistrial, before retrial. The Commonwealth asks us to hold, as the United States Supreme Court did in *Richardson* v. *United States*, 468 U.S. 317, 323 (1984), that, after a "hung jury," an appellate court need not consider the sufficiency of the evidence at the first trial. We rejected this invitation in the *Berry* case and decline to revisit the issue now.

which were for the jury, that the defendant had a motive. She told the police that she believed she was the beneficiary of a life insurance policy. She explained to the officers that her parents would not let her live away from home while she attended college, would not let her see her boy friend, and assigned her household chores that she found burdensome and time consuming. In addition, multiple witnesses testified that the defendant remained calm throughout the fire and its aftermath. One police officer observed that the defendant focused a great deal of her attention on the well-being of her possessions. Finally, there was testimony that the defendant twice admitted to police officers that she was responsible for the fire. Although these admissions came amidst several denials of responsibility, a jury could permissibly conclude that her admissions were credible and her denials were not. Thus, a jury finding that the defendant set the fire that killed the two victims was warranted.

The evidence was also sufficient for the jury to determine that the killings were premeditated or committed with extreme atrocity or cruelty. Deliberate premeditation requires forming "a plan to kill after deliberation and reflection, but no particular length of time is required." *Commonwealth* v. *Coren*, 437 Mass. 723, 730 (2002). The evidence and the inferences therefrom that the jury could credit are sufficient to establish that the defendant planned the fire ahead of time and set it intentionally. The jury could also conclude that the killings were committed with extreme atrocity or cruelty. The extent of burn injuries on the victims' bodies indicated that the victims suffered considerable pain. See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). For the foregoing reasons, we conclude that the evidence was sufficient for a rational jury to find the defendant guilty of murder in the first degree and arson, and that therefore a retrial does not implicate double jeopardy concerns.

3. *Judicial error.* The defendant contends additionally that, even if the evidence was sufficient at her first trial, retrial is impermissible because the mistrial that occurred was the result of a judicial error. During deliberations, the jury submitted a question asking whether a conviction required a finding that the defendant actually started the fire herself. The defendant claims that the judge's negative response was erroneous because it was inconsistent with the evidence. Moreover, she alleges that the

judge was aware that no evidence on this matter had been presented, but answered the question as he did in bad faith in order to provide the Commonwealth a more favorable opportunity to convict.

There was no evidence presented at trial that anyone other than the defendant set the fire. There was evidence that Kenneth Choy appeared calm when emergency personnel arrived on the scene, that there was a rolled up towel behind his bedroom door that would have impeded the fire's spread into his bedroom, and that there was lighter fluid and a lighter in a drawer in his bedroom. That evidence is not sufficient to justify a jury in deciding beyond a reasonable doubt that Kenneth Choy in fact set the fire himself. Nor was there evidence presented that the defendant participated in a joint venture with Kenneth or anyone else to set the fire. Thus, the judge's answer to the jury's question invited the jury to convict the defendant under a theory for which there was insufficient evidentiary support, and was therefore erroneous.

While the defendant is correct that the judge's answer was erroneous, we conclude that the defendant's claim that the error bars any retrial is without merit. "Absent evidence that the judge acted in bad faith, alleged judicial errors giving rise to a mistrial do not support a claim of double jeopardy." *Commonwealth* v. *Ellis*, 432 Mass. 746, 752 (2000). Such bad faith conduct must "afford the prosecution a more favorable opportunity to convict," *United States* v. *Dinitz*, 424 U.S. 600, 611 (1976), quoting *Downum* v. *United States*, 372 U.S. 734, 736 (1963), or be intended to provoke the defendant into moving for a mistrial. *Commonwealth* v. *Nolan*, 427 Mass. 541, 543 (1998). The defendant contends that the lack of evidence of a joint venture "exposes" that the judge's response to the jury's question was given in bad faith. An argument on appeal that an action by a trial judge is erroneous is appropriate advocacy. However, a claim that a judge's ruling was made in bad faith is a serious allegation not to be made casually. The fact that the judge made an error, in itself, is not evidence of bad faith. There is no basis in this record for a charge of bad faith on the part of the judge. And because the error was not a product of bad faith, the defendant is not entitled to a judgment of acquittal on all charges. See *Commonwealth* v. *Ellis, supra.*

4. *Joint venture theory.* The defendant maintains that, even if

the protection against double jeopardy permits a second trial, it prohibits the Commonwealth from pursuing a joint venture theory at retrial where it did not do so in the original trial.[7] Because of the particular terms of the arson statute, G. L. c. 266, § 1, we need not reach this issue.

The arson statute provides that "[w]hoever wilfully and maliciously sets fire to, burns, or causes to be burned, or whoever aids, counsels or procures the burning of, a dwelling house . . . shall be punished." G. L. c. 266, § 1.[8] The double jeopardy clause does not prohibit the Commonwealth from introducing any evidence to which it has access at a retrial, irrespective of whether such evidence was offered at the first trial.[9] If the evidence on retrial supports a finding beyond a reasonable doubt that the defendant personally set the fire; caused it to be set; or aided and abetted, counselled, or procured the setting of the fire, the jury would be entitled to find the defendant guilty of arson as a principal.[10] If the jury so found, and if they were also

---

[7]There is no dispute that at the trial, the Commonwealth did not pursue a joint venture theory: it did not suggest a joint venture theory in its opening statement, present any evidence to support a joint venture between the defendant and her nephew, Kenneth Choy, or seek a joint venture instruction when the jury were originally charged. The Commonwealth did request a joint venture instruction after the jury asked whether the defendant must have started the fire physically in order to be found guilty, but the judge denied the request.

[8]General Laws c. 266, § 1, was rewritten in 1932 specifically to broaden the types of acts that would constitute the crime of arson. See St. 1932, c. 192, § 1. General Laws (Ter. Ed.) c. 266, § 1, had applied only to one who "wilfully and maliciously burn[ed] the dwelling house of another" or "wilfully and maliciously set[] fire to a building by the burning whereof such dwelling house is burned." See Commonwealth v. Bloomberg, 302 Mass. 349, 351-352 (1939).

[9]Kenneth Choy was indicted for murder in the first degree of Jimmy and Anne Choy, was tried separately from the defendant on these indictments, and was acquitted. The Commonwealth informs us that it intends to call Kenneth Choy as a witness at a retrial of the defendant, and describes Kenneth Choy's anticipated testimony, which includes a detailed recitation of his participation in the planning and execution of the fire that burned the house and led to the deaths of Jimmy and Anne Choy.

[10]Depending on the evidence, and in accordance with the terms of the arson statute, the jury could be instructed along the following lines:

"A person commits the crime of arson if she commits any one or more of the following acts: she sets fire to a dwelling house or home; she burns the home; she causes the home to be burned; or she aids and abets, counsels, or arranges for the burning of the home. If the Com-

to find that the defendant intended to kill her parents and that the element of "deliberate premeditation" or "extreme atrocity or cruelty," or both, had been proved beyond a reasonable doubt, they would be entitled to find the defendant guilty of murder in the first degree as a principal.[11,12]

monwealth proves beyond a reasonable doubt that the defendant herself committed any one or more of the acts that I have just described, you may find the defendant guilty of arson."

This is intended as a template. It would only be appropriate to include (in the description of the acts that may constitute the crime of arson) those specific acts set out in the arson statute for which there is sufficient evidentiary support to warrant a finding of guilt beyond a reasonable doubt. Moreover, some of the words used in the statute — and therefore in this template instruction — may well warrant further definition or explanation for the jury by the trial judge.

[11]As set out in the Model Jury Instructions on Homicide 7 (1999), to prove the crime of murder in the first degree the Commonwealth must establish beyond a reasonable doubt, inter alia, that there was an "unlawful killing" of the victims; the term "killing" refers to "causing of death." On the assumption that the evidence on retrial establishes that the victims, Jimmy and Anne Choy, died as a result of smoke inhalation and burns from the fire in their home, if the jury were to find that the defendant committed arson by committing one or more of the acts set out in the arson statute, they would be entitled to find that by so doing, she caused the death of her parents, whether or not her nephew, Kenneth Choy, assisted her in setting the fire.

[12]The defendant claims that principles of judicial estoppel prohibit the Commonwealth from pursuing a joint venture theory at a retrial of this case, and that pursuit of joint venture liability would create an impermissible variance with the indictment. (See note 4, *supra*.) For the reasons just discussed in the text, we have concluded that the specific terms of the arson statute, G. L. c. 266, § 1, permit the Commonwealth on retrial to pursue a theory that the defendant, while acting together with Kenneth Choy in setting fire to her parents' home, is guilty of arson (and murder) as a principal, and therefore there is no need in this case to reach the question whether the Commonwealth generally may pursue a joint venture theory on retrial of a case originally tried on a theory of principal liability only. Nevertheless, we briefly address the defendant's two claims. Judicial estoppel prevents a party "who has successfully maintained a certain position at a trial . . . [from assuming at a subsequent trial between the same parties] a position relative to the same subject that is directly contrary to that taken at the first trial." *Commonwealth* v. *Semedo, ante* 1, 18 (2010), quoting *Commonwealth* v. *Prophete*, 443 Mass. 548, 555 n.10 (2005). Joint venture liability is not "directly contrary" to principal liability, but complementary; the Commonwealth often pursues both "theories" in one case. See, e.g., *Commonwealth* v. *Williams*, 450 Mass. 894, 898-899 (2008). See also *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467-469 (2009). With respect to the second issue of variance with the indictment, the fact that the indictment does not specifically charge the defendant with "aiding, counseling, or procuring the burning" of her parents' house would not itself preclude the Commonwealth from proceeding on

5. *Conclusion.* On this record, the Commonwealth is not barred from again trying the defendant as a principal on charges of murder in the first degree and arson. The single justice was correct in denying the petition for relief pursuant to G. L. c. 211, § 3.

*Judgment affirmed.*

COWIN, J. (dissenting, with whom Spina, J., joins). I agree with the court that the evidence at the first trial was sufficient to sustain convictions, had the jury so determined, of murder in the first degree and arson, on the ground that the defendant was the principal perpetrator of those offenses. Accordingly, the defendant may be retried on that theory. I do not agree that the defendant may, consistent with principles applicable to double jeopardy, be retried on the alternative theory[1] that she was a joint venturer who collaborated with another who was the principal. The Commonwealth had its opportunity to attempt to convict the defendant as a joint venturer at the first trial; it presented no evidence or argument to that effect, and should not now be permitted to prosecute the defendant on a legal basis which it previously ignored. By taking unwarranted refuge in the peculiarities of the arson statute, G. L. c. 266, § 1, the court avoids the real issue in the case, and I respectfully dissent.

It is undisputed that the Commonwealth did not seek to convict the defendant as a joint venturer at the first trial. The Commonwealth did not suggest a joint venture in the opening statement,

a joint venture theory, or, of more direct relevance to this case, a theory that the defendant acted with Kenneth Choy in setting fire to the home. See *Commonwealth* v. *DiCicco*, 44 Mass. App. Ct. 111, 116-117 (1998).

[1]Despite *Commonwealth* v. *Santos*, 440 Mass. 281, 290 (2003), I use the term "theory" advisedly. In the *Santos* case, we denied that principal and joint venture liability are different "theories" of criminal behavior. We did so in a single sentence without citation to authority in a case addressed solely to the question whether a jury's choice between principal and joint venture liability requires unanimity. Asking a jury to convict on either a principal or joint venture basis asks them to engage in different kinds of analyses based on different facts. This does constitute the application of different "theories," as we have acknowledged in *Commonwealth* v. *Berry*, 431 Mass. 326, 333-334 (2000); *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995), and numerous other cases. We should once and for all abandon the inaccurate denial of that reality that found its way into the *Santos* decision.

presented no evidence of a joint venture, and requested no joint venture instruction until after deliberations had begun and the jury indicated by means of a question that they were considering the possibility that more than one perpetrator was involved. In fact, the Commonwealth took affirmative steps to *prevent* the possibility of conviction of the defendant as a joint venturer by successfully moving in limine for exclusion of a written check-list, prepared by the defendant's nephew, explaining how to set the fire.

The question is, therefore, whether at a retrial the Commonwealth may be permitted to do what it did not do before. We have stated in dictum that double jeopardy principles forbid the Commonwealth from introducing a new theory for the first time at a retrial. See *Taylor* v. *Commonwealth*, 447 Mass. 49, 53 (2006).

> "We think it is clear as a matter of common law principle that, if a defendant demonstrates on appeal that the evidence was insufficient to warrant his conviction of a crime on a particular theory, on retrial for the same crime the prosecutor may rely on other theories justifying his conviction that were supported by the evidence at the first trial but may not rely on a theory that should not have been given to the jury at that first trial. The double jeopardy clause of the Fifth Amendment to the Constitution of the United States probably requires the same conclusion."

*Commonwealth* v. *Fickett*, 403 Mass. 194, 199 n.4 (1988). The present case illustrates why we should indorse this statement of law without reservation as a principle required by double jeopardy considerations, whether they derive from the Fifth Amendment; G. L. c. 263, § 7 (codifying protection against double jeopardy); or the common law (see *Commonwealth* v. *Woods*, 414 Mass. 343, 346, cert. denied, 510 U.S. 815 [1993]).

Few courts in other jurisdictions have addressed the issue. The courts that have considered it have reached different conclusions, but without an extensive analysis of the principles involved. On the one hand, see *State* v. *Hernandez*, 126 N.M. 377, 381 (Ct. App. 1998) (prohibition against double jeopardy prevented State from pursuing attempted first degree felony-

murder at retrial when it did not do so at first trial); *State* v. *Wulff*, 207 Wis. 2d 143, 153-154 (1997) (State could not pursue at retrial theory of sexual assault not charged to jury at first trial). See also *Saylor* v. *Cornelius*, 845 F.2d 1401, 1403, 1408 (6th Cir. 1988), discussed *infra*. In contrast, see *United States* v. *Ragano*, 520 F.2d 1191, 1197-1198 (5th Cir. 1975), cert. denied, 427 U.S. 905 (1976) (government could rely on new theory of false statement on tax return in second trial); *Banther* v. *State*, 977 A.2d 870, 883-885 (Del. 2009) (State could rely on principal liability theory it did not present at first two trials). See also *Spraggins* v. *State*, 255 Ga. 195, 201 (1985), cert. denied, 478 U.S. 1014 (1986) (State could present evidence of aggravating circumstances at resentencing hearing not presented at first sentencing trial).

In my view, the core purposes of the prohibition against double jeopardy prevent the Commonwealth from relying on a theory of liability at a second trial after failing to present evidence based on that theory at the initial trial. One fundamental purpose of the double jeopardy clause is to protect criminal defendants from the "embarrassment, expense . . . ordeal . . . anxiety and insecurity" of multiple prosecutions. *Green* v. *United States*, 355 U.S. 184, 187 (1957). In addition, the prohibition protects the defendant's right to have the first jury empanelled decide guilt or innocence. *Oregon* v. *Kennedy*, 456 U.S. 667, 672 (1982). Furthermore, the prohibition against double jeopardy prevents the Commonwealth from "honing its trial strategies and perfecting its evidence" in successive prosecutions, thus securing a conviction based on "sheer governmental perseverance." *Tibbs* v. *Florida*, 457 U.S. 31, 41 (1982).

Retrial is permissible when the first jury cannot agree on a verdict, but only where the Commonwealth has met its burden in the first trial to present evidence strong enough that a rational jury could have found the defendant guilty beyond a reasonable doubt. *Berry* v. *Commonwealth*, 393 Mass. 793, 794 (1985). At retrial, the Commonwealth may present new evidence, *Tibbs* v. *Florida*, *supra* at 43 n.19, but it may not rely on legal theories it did not present on its first attempt. To do so conflicts with both the interests the prohibition against double jeopardy safeguards and the objective of the due process requirement that there be sufficient evidence to support a verdict.

In *Saylor* v. *Cornelius*, *supra*, the United States Court of

Appeals for the Sixth Circuit went even further in limiting the State's rights at a retrial. There, in a case arising in Kentucky, the State presented evidence sufficient to convict the defendant of murder as an accomplice, but presented no evidence that he participated in a conspiracy to commit the homicide. *Id.* at 1402. For reasons that are unclear, the trial judge instructed the jury only on the conspiracy charge and, without objection by the prosecutor, ignored the accomplice theory. *Id.* The jury proceeded to convict the defendant of conspiracy, a verdict that was understandably reversed by the Supreme Court of Kentucky on the ground of insufficiency of the evidence. *Id.* That court concluded, however, that the charge that the defendant was an accomplice could be pursued by the prosecutor at a retrial. *Id.* at 1403.

Reviewing a lower court decision denying Saylor's Federal habeas corpus petition, the Sixth Circuit held that it would violate the defendant's right to be free from double jeopardy to allow the accomplice theory at a retrial. *Saylor* v. *Cornelius, supra* at 1403, 1408. The court reasoned that, despite adequate evidence, the prosecutor had failed to ensure that the charge reached the jury for consideration and thus could not receive a second chance to do so. I believe that the *Saylor* court's reasoning applies even more forcefully when, as here, the prosecutor has offered no evidence at all in support of a given theory of guilt. In the present case, the Commonwealth made a conscious choice to forgo a joint venture prosecution. It only sought to present a joint venture theory once deliberations began in the first trial and the jury indicated that they were entertaining the possibility that more than one person might have been involved.

What is important in the *Saylor* decision is not so much the presence or absence of sufficient evidence in support of the prosecutor's chosen theory at the first trial;[2] rather, it is that the prosecutor in fact chose a theory of the case and subjected the defendant to a trial on that theory. With sufficient evidence and a hung jury, the prosecutor may try again to convince a jury, but he or she may not attempt to do so on a theory that the Commonwealth declined to present in its initial effort. Such is the case today.

---

[2] Obviously, if there is an absence of sufficient evidence to support the prosecutor's chosen theory, the charge cannot be retried.

The prohibition against double jeopardy does not permit the Commonwealth to choose strategically to omit a theory of liability and later present it for the first time in a subsequent proceeding when the result of the first trial suggests its tactical decision may have been unwise. Allowing such a practice would conflict with the well-established proposition that retrials are only available when manifest necessity prevented the Commonwealth from receiving a decision on the case it presented in the first trial. Such a practice conflicts with a defendant's right to have the first jury empanelled reach a verdict on the case, and would allow the Commonwealth to refine impermissibly its presentation based on a theory it could have presented, but chose not to present, in the first trial.

I would conclude that the prohibition against double jeopardy enshrined in the Federal Constitution, and in the common and statutory law of Massachusetts, does not permit such a second bite at the apple. The Commonwealth has both the resources and the flexibility necessary to investigate the case, bring appropriate charges at a time of its choosing, and prepare the case for trial on whatever theories it deems viable. The Commonwealth should be held to its choices in this regard.

Applying principles of double jeopardy in this way does not deprive the Commonwealth of the use of new evidence that may materialize between an original trial and a new trial. It is not new evidence that principles of double jeopardy prohibit, but rather, new legal principles on which the Commonwealth seeks to predicate guilt. In the present case, the Commonwealth proceeded on the supposition that the defendant herself burned down the house, thereby committing itself to a theory of the case. The Commonwealth could have, but did not, proffer as an alternative that the defendant acted as a joint venturer. Having chosen its course, the Commonwealth may (subject to adequate notice) introduce whatever evidence in support thereof it may have, but it is not free to depart from its chosen route at its convenience.

Our recent decision in *Commonwealth* v. *Zanetti*, 454 Mass. 449 (2009), does not lead to a different result. There, we adopted a new approach for reviewing the evidence supporting a conviction when a defendant may have acted in concert with others. We concluded that as long as the evidence is sufficient for a

rational jury to conclude that the defendant knowingly participated in the crime with the intent required to commit it, a conviction will be upheld without the need to distinguish whether the defendant acted as a principal or a joint venturer. *Id.* at 468.[3] Thus, the *Zanetti* decision addresses the due process requirement that a criminal conviction be supported by sufficient evidence from which a rational jury could conclude that the defendant was guilty beyond a reasonable doubt. See *Jackson* v. *Virginia*, 443 U.S. 307, 316 (1979).

The *Zanetti* decision does not consider double jeopardy issues and does not establish that a retrial on joint venture liability must be permitted in this case. Protection against double jeopardy is separate from the due process right to a verdict based on sufficient evidence. Principles of double jeopardy place limits on the Commonwealth's conduct in *subsequent* criminal proceedings. These principles determine whether the Commonwealth may seek to convict a defendant of a crime or prove an essential fact in light of prior proceedings on the same subject. See *Ashe* v. *Swenson*, 397 U.S. 436, 443, 445 (1970); *Green* v. *United States*, 355 U.S. 184, 188 (1957). Redefining how to review the evidence supporting a conviction, as we did in the *Zanetti* decision, does not permit a retrial where principles of double jeopardy forbid it.

The court today sidesteps the double jeopardy question by locating a right to retry the defendant as a joint venturer under the arson statute (G. L. c. 266, § 1). That statute provides in relevant part that "[w]hoever wilfully and maliciously sets fire to, burns, or causes to be burned, *or* whoever aids, counsels, or procures the burning of, a dwelling house . . . shall be punished . . . ." (emphasis supplied). Thus, the statute permits prosecution of a given defendant as a principal, as a joint venturer, or both. Contrary to the holding of the court, what it does not do is permit the Commonwealth to seek to convict under different portions of the statute at successive trials. Because the court misconstrues the statute and applies it in a manner that violates the prohibition against double jeopardy, I respectfully dissent.

---

[3]For an opposing view, see *Commonwealth* v. *Zanetti*, 454 Mass. 449, 471-474 (2009) (Cowin, J., dissenting).